```
                   UNITED STATES DISTRICT COURT
                      DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| RICHARD BAKER and KRISTINE BAKER, | 1:17-cv-08131-NLH-AMD |
| Plaintiffs, | **OPINION** |
| v. | |
| MCDONALD'S RESTAURANT, MCDONALD'S RESTAURANT OF NEW JERSEY, INC., MCDONALD'S OF PENNSVILLE, 6705, NJ, INC., MCDONALD'S CORPORATION, MCDONALD'S USA, LLC, | |
| Defendants. | |

**APPEARANCES**:

SARAH FILIPPI DOOLEY
KENNETH F. FULGINITI
DUFFY + FULGINITI
1650 MARKET ST
55TH FLOOR
PHILADELPHIA, PA 19103

   *On behalf of Plaintiffs*

MARK A. LOCKETT
BONNER, KIERNAN, TREBACH & CROCIATA, LLP
TEN PENN CENTER, SUITE 770
1801 MARKET STREET
PHILADELPHIA, PA 19103

   *On behalf of Defendants*

**HILLMAN**, District Judge

   This matter concerns whether Defendant McDonald's is liable for the injuries Plaintiff Richard Baker, an independent contractor, sustained when he fell in a McDonald's restaurant

while delivering French fries and other items.  McDonald's has moved for summary judgment in its favor, arguing that it cannot be held liable.  Plaintiff has opposed McDonald's motion.  For the reasons expressed below, McDonald's motion for summary judgment will be denied.

## BACKGROUND

On October 13, 2015, Plaintiff, who was employed by The Martin-Brower Company, a distribution company, drove his delivery truck to the McDonald's restaurant in Pennsville, New Jersey to deliver food and other supplies.  The truck had been preloaded by Martin-Brower employees with shrink-wrapped cases of product stacked onto wheeled carts.  Plaintiff's job was to unload the appropriate carts from his truck and bring them into the McDonald's.  Plaintiff was required to take the carts with refrigerated product into the walk-in refrigerator, and the carts with frozen product into the walk-in freezer.  Once the carts had been delivered to their proper destination, Plaintiff would leave, and the McDonald's employees would unload the carts.

The McDonald's in Pennsville was Plaintiff's first stop that day.  Plaintiff unloaded from the truck a cart containing 20 cases of French fries which weighed 750 pounds.  In order to bring the cart into the freezer, the cart had to roll up a ramp between the refrigerator and the freezer.  Plaintiff claims that

2

when he pulled the cart up the ramp into the freezer, the cart caught an obstruction on the threshold before the ramp and stopped suddenly, causing Plaintiff to slip and the cart and its contents fell on him. Plaintiff claims that he suffered injuries to his lower back, legs, and thumb.

Plaintiff filed a two-count complaint against McDonald's. Plaintiff's first count alleges that McDonald's was negligent in permitting the restaurant, and specifically the threshold between the refrigerator and freezer, to remain in a hazardous condition despite being aware of the dangerous nature of the ramp. The second count is asserted by Plaintiff's spouse, Kristine Baker, for loss of consortium.

McDonald's has moved for summary judgment in its favor. It argues that under New Jersey law a landowner has no duty to protect an employee of an independent contractor who is injured while performing his work where the landowner did not control the means and manner of the work performed. McDonald's argues that the method of Plaintiff's delivery was solely governed by Martin-Brower protocol, and McDonald's therefore cannot be liable for his injuries. More specifically, McDonald's argues that his employer's protocol required Plaintiff to pull the cart instead of push the cart, and he should have broken-down the contents of the cart to make it lighter and easier to maneuver.

Plaintiff has opposed McDonald's motion, arguing that

3

regardless of whether Plaintiff was delivering products under his employer's protocol, he has asserted a direct claim, rather than a vicarious claim, against McDonald's for its negligence in its duty to a business invitee to maintain a safe condition - i.e., the ramp McDonald's installed between the refrigerator and freezer was maintained in a hazardous condition, a condition that Plaintiff had nothing to do with, and that hazardous condition caused Plaintiff's injuries.

## DISCUSSION

### A. Subject Matter Jurisdiction

This Court has jurisdiction over this matter based on the diversity of citizenship of the parties and an amount in controversy in excess of $75,000, exclusive of interests and costs, pursuant to 28 U.S.C. § 1332(a). Plaintiffs are citizens of Pennsylvania, and the Defendant McDonald's entities are citizens of New Jersey, Delaware, and Illinois. (See Docket No. 59.)

### B. Standard for Summary Judgment

Summary judgment is appropriate where the Court is satisfied that the materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, or interrogatory answers, demonstrate that there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(a). An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id. Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57. A party opposing summary judgment must do more than just

5

rest upon mere allegations, general denials, or vague statements.  Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

 **C.** **Analysis**

 "An occupier of land owes a duty to his invitee to use reasonable care to make the premises safe."  Olivo v. Owens-Illinois, Inc., 895 A.2d 1143, 1150 (N.J. 2006) (citation omitted).  This duty extends to invitees who are independent contractors.  Id. (quoting Gudnestad v. Seaboard Coal Dock Co., 15 N.J. 210, 219, 104 A.2d 313 (1954)) ("[W]here the occupier of land[ ] engages an independent contractor to do work upon his premises, an employee of the contractor, while executing the work, ... is an invitee....").  The landowner's duty is "to provide a reasonably safe work place."  Id. (quoting Muhammad v. New Jersey Transit, 821 A.2d 1148, 1154-55 (N.J. 2003)).  "[T]he duty of a landowner to such an invitee is nondelegable.  The landowner cannot escape its responsibility to provide a safe place to work by attempting to transfer it to another.  The possibility that another person may also have been negligent does not relieve the landowner of his legal duty."  Sanna v. National Sponge Co., 506 A.2d 1258, 1262 (N.J. Super. Ct. App. Div. 1986).

New Jersey "law carves out an exception to the requirement that premises be made safe for an independent contractor when the contractor is invited onto the land to perform a specific task in respect of the hazard itself." Olivo, 895 A.2d at 1143 (citing Muhammad, 821 A.2d at 1154). "An independent contractor is a person who, in carrying on an independent business, contracts to do a piece of work according to his own methods without being subject to the control of the employer as to the means by which the result is to be accomplished." Muhammad, 821 A.2d at 1154-55 (citation omitted). "'Generally . . . the principal is not vicariously liable for the torts of the independent contractor if the principal did not direct or participate in them.'" Id. (quoting Baldasarre v. Butler, 625 A.2d 458, 465 (N.J. 1993)).

The landowner which engages an independent contractor may be liable if: (1) the landowner retains control of the manner and means of the doing of the work which is the subject of the contract; (2) where the landowner engages an incompetent contractor; or (3) where the activity contracted for constitutes a nuisance *per se*. Id. (citation omitted); cf. Piro v. Public Service Elec. & Gas. Co., 247 A.2d 678, 682 (N.J. Super. Ct. App. Div. 1968) ("Contrary to defendant's contention, control over or supervisory authority of the actions of the independent contractor is obviously not relevant in such cases because it is

7

the negligence of the landowner himself that is the basis for imposing liability.").

McDonald's argues that it "had nothing to do with" how Plaintiff performed his job of delivering French fries into the freezer. McDonald's contends that Plaintiff's employer trained the drivers in the manner in which to unload and deliver the carts into the restaurant, including the requirement that Plaintiff pull and not push a cart, and McDonald's took no part in that training. McDonald's further argues that the McDonald's employees at the Pennsville restaurant did not direct Plaintiff in any way while Plaintiff made his delivery that day. Because McDonald's did not direct or participate in Plaintiff's delivery, it cannot be held liable for Plaintiff's injuries.

Plaintiff, on the other hand, argues that he "had nothing to do with" how McDonald's maintained the threshold between the refrigerator and freezer. Plaintiff contends that the independent contractor exception to a landowner's duty to a business invitee is a defense to a claim that he has not asserted. Rather, separate from whether Plaintiff was performing work pursuant to his employer's training, McDonald's was still under a nondelegable duty to Plaintiff to maintain its restaurant in a safe condition, and McDonald's failed in that duty.

To the extent that the independent contractor exception

8

would apply, Plaintiff argues that contrary to the assertion by McDonald's that it did not direct Plaintiff's actions, McDonald's directed his employer on how it wanted deliveries to be effected, including the delivery of product on carts directly to the refrigerator and freezer.  Moreover, Plaintiff points out that he did not come to McDonald's as an independent contractor to work on the condition - the ramp - which caused his injury, and it was McDonald's that directed him to put product directly into the freezer by way of a ramp that McDonald's had constructed and maintained.

The determination of who did or did not have something to do with Plaintiff's injuries must be submitted to a jury. Plaintiff has presented numerous disputed issues of material fact regarding McDonald's duty to provide a safe place for Plaintiff to work,[1] as well as the interaction between

---

[1] For example, Plaintiffs' expert engineer, Jeffrey Ketchman, P.E., Ph.D., opined:

> McDonald's negligently created a hazardous condition for delivery personnel using carts to enter the freezer due to their abandonment of the system of direct freezer delivery using the roller-conveyer system, as well as their failure to maintain the refrigerator/freezer area.  The entrance threshold had a non-beveled vertical step-up and the internal freezer floor did not have a non-slip surface. McDonald's is responsible for both these design defects, which contributed directly to Mr. Baker's fall.  ANSI requires changes in level of more than½ of an inch to be beveled, or ramped with a slope not steeper than 1:8.  Both the original in-freezer ramp and the diamond-plate ramps installed after Mr. Baker's incident are too steep to meet

Plaintiff's employer and McDonald's regarding Plaintiff's method of delivery.  Whether McDonald's will prevail on its independent contractor defense to liability for Plaintiff's and his spouse's injuries is for the jury to decide or for the court if Plaintiff's evidence to defeat the defense is insufficient. See, e.g., Barile v. 3M Co., Inc., 2013 WL 4727128, at *4 (N.J. Super. Ct. App. Div. 2013) ("After the evidence was presented at the trial, the court granted a directed verdict and dismissed plaintiff's claims against Exxon arising from [plaintiff's deceased husband's] exposure [to asbestos] at the Bayway facility.  The court ruled that plaintiff had not presented sufficient evidence to refute Exxon's defense that it was the task of Philip Carey as an independent contractor rather than Exxon to determine the safety precautions needed for the asbestos work and to warn its own employees of the dangers of breathing asbestos fibers.  The court denied Exxon's similar

---

this requirement.  All ramps should have been made, or treated to be, non-slip.  An acceptable alternative design would be a single continuous ramp to the freezer floor from the level of the refrigerator floor.  Alternatively, a portable ramp could have been provided for delivery people to use.  Further, McDonald's failed to complete inspections of the facilities with documentation of conditions and potential hazards.  Staff failed to perform industry custom daily inspections.

(Docket No. 53 at 14-15.)

10

motion to dismiss plaintiff's claims arising from the pipe work at the Bayonne chemical plant, finding that issues of fact had been presented regarding Exxon's role in controlling and supervising that job. Regarding the Bayonne facility, the jury found, in effect, that the independent contractor defense was not available to Exxon but that plaintiff had not proven Exxon's negligence in providing a hazardous worksite."); Great Northern Ins. Co. v. Leontarakis, 904 A.2d 846, 848 (N.J. Super. Ct. App. Div. 2006) ("Spiegel appeals from an order of involuntary dismissal at the conclusion of his case. The trial court reasoned that Leontarakis [the landowner] was not liable for any damage to Spiegel's property, because the excavation work [at Leontarakis's property] that caused the damage [to Spiegel's property] was performed by an independent contractor. We reverse the involuntary dismissal order, however, because a reasonable jury could conclude Leontarakis breached a nondelegable statutory duty to [Spiegel]."); Meny v. Carlson, 77 A.2d 245, 253-54 (N.J. 1951) ("[T]he defendant, Carlson Company, if it assumed the obligation of furnishing scaffolding for the plaintiff's use, owed a duty to the plaintiff to furnish a reasonably safe scaffold, and that the Carlson Company could not relieve itself of such duty by delegating the construction of the scaffold to an independent contractor. While the scaffold was erected by [another independent contractor] Busman and

11

Rosen, Inc., it was within the province of the jury to determine that it was supplied by the Carlson Company for use by the plaintiff and others."); Moore v. Schering Plough, Inc., 746 A.2d 1, 4-5 (N.J. Super. Ct. App. Div. 2000) (where an independent contractor security guard slipped on ice and snow on the defendant landowner's property while performing security duties for defendant, finding that whether defendant breached its duty of care to its business invitee independent contractor security guard required a jury to consider "the extent and timing of the snowfall, the time of day or night, the nature of the efforts actually taken by the owner to maintain the premises, the practicality of cleaning up in stages or by priorities, the plaintiff's care for his own safety including his foot wear, the minimal usage consequent on the 'closed' facility in contrast to a normal work week, and any other pertinent factors"); McManus v. Barnegat Rehabilitation and Nursing Center, 2018 WL 2411614, at *10 (D.N.J. 2018) ("McManus has proffered testimony from which a jury could conclude Barnegat 'retain[ed] control over the means and methods' of McManus's work and is therefore not entitled to the exception to the landowner's duty of care.  Further, McManus's engineering expert, Dr. Nolte, has offered testimony that the slope at Barnegat's facility represented a hazardous condition. The Court, accepting McManus's evidence as true and drawing all

12

justifiable inferences in his favor, finds a reasonable jury could find Barnegat was liable for his injuries," thus denying Barnegat's motion for summary judgment.); Gil v. Alverado, 2018 WL 2923976, at *4 (N.J. Super. Ct. App. Div. 2018) ("Magic Roofing and Alverado owed [Plaintiff] a duty to prevent the foreseeable risk of tripping over the improperly placed hose by inspecting the property at the end of the work day to ensure the safety of the residential tenants of the building. . . .  The question whether the hose was a dangerous condition presents a disputed issue of fact that should be resolved by a jury. . . . The issues of [Plaintiff's] comparative negligence and assumption of the risk are factual determinations that also should be made by a jury.").

## CONCLUSION

For the reasons expressed above, McDonald's motion for summary judgment must be denied.  An appropriate order will be entered.

Date: April 29, 2020           s/ Noel L. Hillman
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.

13